J. Makee and Emily E. M. Peck *v*. J. O. Dominis and C. R. Bishop.

## SUPREME COURT—IN BANCO.

### OCTOBER TERM—1874.

*Allen, Ch. J., and Harris J.*

JAMES MAKEE AND EMILY E. M. PECK, ADMINISTRATORS OF SHERMAN PECK, DECEASED, *vs*. JOHN O. DOMINIS AND CHARLES R. BISHOP, ADMINISTRATORS OF THE ESTATE OF KAMEHAMEHA V., DECEASED, AND OTHERS.

THE real estate of a partnership used and applied to partnership purposes stands on the same footing as other partnership stock. The interest of any partner therein is his share in the surplus after the partnership accounts are settled. If, therefore, any partner has given a mortgage on his individual share in a partnership holding real estate among its stock such mortgage is subject to the liabilities of the firm, and if made without notice or consent of the other parties in interest is subject to liabilities subsequently accruing.

This is a submission under the provisions of the Civil Code. The facts in this case are substantially as follows:

On the 25th September, 1869, a co-partnership was formed by John O. Dominis, acting for His Majesty Kamehameha V., Ferdinand W. Hutchison, James Makee and Z. S.

Spalding, under the firm name of the West Maui Sugar Association, for the manufacture of Sugar at Lahaina, with paid up capital of $40,000, in equal shares of $10,000, said co-partnership to expire by limitation July 1st, 1878.

That said business was thus carried out until the first day of March, 1872, when James Makee, by deed of that date, in consideration of $15,000, conveyed to Parker N. Makee all the one quarter interest of the said James Makee in all the property owned by him in the West Maui Sugar Association, and also his own quarter interest in the capital stock and effects thereof. That at that date the co-partnership was indebted to C. Brewer & Co., $31,077.03 and interest, and the value of sugar in their hands estimated at $6,425.40. That about the same time His Majesty Kamehameha V. purchased the one quarter share of Z. S. Spalding in the said co-partnership property, stocks and effects. That the business continued to be carried on under the articles aforesaid, except that His Majesty Kamehameha V. was entitled to one half share in the co-partnership until the 9th September, 1872, when new articles of co-partnership were entered into between John O. Dominis, acting for His Majesty, and F. W. Hutchison and the said Parker N. Makee, whereby they associated themselves together under the same firm name and for the same business objects. That the capital stock, all paid up, was $40,000 in four equal shares of $10,000 each. His Majesty holding two shares, and F. W. Hutchison and Parker N. Makee one share each.

That the property of the co-partnership embraced all the real estate in fee, and all the leasehold estate in Lahaina, with buildings, improvements and crops thereon, including all the property that formerly belonged to or was possessed by the West Maui Sugar Association or their agents, said co-partnership to continue for five years, unless sooner dissolved by mutual consent. That said Parker N. Makee was appointed managing agent at Lahaina, and continued to act

J. Makee and Emily E. M. Peck *v.* J. O. Dominis and C. R. Bishop.

as such up to and until the sale of the whole co-partnership property on the 6th July, 1874.

That on the 30th June, 1873, Parker N. Makee and wife executed a mortgage of all his undivided one quarter interest or share in said association and the capital stock and effects thereof, unto James Makee and Emily E. M. Peck, administrators of Sherman Peck, deceased, to secure the payment of two promissory notes dated the 5th day of February, 1872, made by P. N. Makee in favor of James Makee, and by him endorsed to the administrators aforesaid, one note for $4,000, payable in two years from date with interest at 9 per cent., payable semi-annually, and the other for $4,500, payable in three years from date, with interest at same rate and payable in same manner. That at the date of the said mortgage the co-partnership was indebted to C. Brewer & Co., in the sum of $47,544.93, with an arrear of interest, and the value of sugar on hand was estimated at $30,440.47. That the said administrators did not give the members of the co-partnership notice of the said mortgage, and in point of fact they had no notice. That His Majesty Kamehameha V. died on the 11th of December, 1872, and administration was granted to John O. Dominis and Charles R. Bishop, who, with the consent of the heir and the surviving partners, continued to carry on the business, and nothing was done either by the co-partners or the mortgagees aforesaid to dissolve or settle the co-partnership.

That on the 6th day of July, 1874, the members of the West Maui Sugar Association sold all their partnership property to Messrs. Campbell & Turton of Lahaina for $38,000, and thus put an end to the co-partnership. That at the time of the sale the co-partnership was indebted to C. Brewer & Co., in the sum of $53,264.44 exclusive of sugar on hand and abroad, estimated at $28,950, or thereabouts, and they are the principal creditors of the firm.

The plaintiffs claim that they are entitled by virtue of said

mortgage to a priority in the partnership assets, and that they are entitled to be paid in full, while the defendants insist that the assets should be first applied to the payment of the debts and liabilities of the partnership, and that the plaintiffs can only claim the said quarter share of said Parker N. Makee in the surplus (if any) of such assets.

It appears by the submission that the whole property was purchased by the partnership funds; that the business of the association was not disturbed by any changes which were made in the firm; so that when James Makee sold his interest to Parker N. Makee, the former retired and the latter became a member of the firm, and the business was conducted as before, there being no settlement of the affairs of the firm at that time.

It is a settled principle of law that partnership property belongs to the partnership, and one partner has no interest in it, except his share of what remains, after all the partnership debts are paid; hence a creditor of one of the partners cannot claim any interest but what belongs to the debtor, and that is in the surplus, after the debts of the partnership are paid. "Until the affairs of the co-partnership are wound up and settled, the claim of a partner is, strictly speaking, merely equitable, for until then, no action can in general be maintained at law, by one partner against the other, for a portion of the profit, or to enforce contribution to pay any loss." Pierce vs. Jackson, 6 Mass., 243. Note and authorities there cited.

Chief Justice Shaw, in the case of Dyer vs. Clark, administrator, and others, 5 Met., 562, declares in substance, "that real estate purchased by partners, out of partnership funds, to be used and applied to partnership purposes, and considered and treated by the partners as part of the partnership stock, is to be deemed, so far as the legal title is concerned, as estate held in common, and not in joint tenancy; but as to the beneficial interest, it is considered, in equity, as affected

with a trust for the partnership until the accounts are settled and the debts of the firm are paid."

It is correctly stated by the counsel for the plaintiffs that a partnership is necessarily dissolved by operation of law, on the death or retirement of a member. When James Makee sold on the first day of March, 1872, to Parker N. Makee, he became part owner and manager and virtually a member of the firm, although the articles of partnership were not executed till September 9th thereafter, and there was due from the old firm at that time on the 1st of March, 1872, succeeding the 5th of February when the sale was made, a balance to C. Brewer & Co. of $24,651.63, for which James Makee was liable for his proportion; but, it would appear that the business went on as before, as if no change in the partnership had been made, that is, there was no winding up of the business, so that on the 30th of June, 1873, there was a balance due of $17,104.46, and on July 6th, 1874, at the time of the sale of the entire property of the association, there was a balance due of $24,314.44; so that it may be legitimately inferred that the debts existing against the firm of which James Makee was a member were cancelled, and new debts incurred by the new firm, and for which they were responsible. It does not appear by the submission that there was any specific agreement in relation to the liability for the old debt, when James Makee retired from the firm.

It appears by the submission that when Parker N. Makee mortgaged the estate to James Makee, on the 30th of June, 1873, the Sugar Association was indebted to C. Brewer & Co. in the sum of $47,544.93, with an arrear of interest and value of sugar on hand, estimated at $30,440.87. It is very clear from the principle already laid down, that Brewer & Co. had a priority of claim over the mortgagee of the individual interest; and the next question is, does the mortgage take effect after this balance is paid and new debts have arisen against the firm ? It is agreed that the plaintiffs did not

J. Makee and Emily E. M. Peck *v.* J. O. Dominis and C. R. Bishop.

give the members of the association notice of the said mortgage, and that they had no notice. It is very clear then that any agreement, whether by mortgage or otherwise, made without the knowledge and the consent of the other parties, ought not to prejudice their rights.

James Makee, when he retired from the firm, permitted the business to go on as before, so that the debt against the firm while he was a member of the firm was paid, and now he cannot come in and claim to divert the funds of the firm from the partnership creditors to pay an individual debt. Had the partnership been brought to a close the debts of the firm would have been paid, and the surplus divided among the partners, of which the said James Makee would have been entitled to one quarter; but this was not done, and it is very evident from the history of the whole transaction that he had no such intention; but on the contrary, he aided in perpetuating the partnership by postponing payment of his notes for some two or three years from date.

It is contended that there was a dissolution of partnership on the death of Kamehameha V., one of the partners, and the administrators and his heir and partners could then have compelled a settlement of the estate, and this is true doctrine; but the administrators agreed with the surviving partners that they would carry on the estate as before, and continued to do so, and thus incurred the liability of partners. Whether the estate would be responsible for any loss, or the administrators, it is not necessary to decide in this case. It was while the business was being conducted by these parties, that Parker N. Makee executed a mortgage to the plaintiffs to secure notes payable on two and three years from date, given to the said James Makee. He took the mortgage subject to the existing state of the partnership. It would appear that by giving so long an extension, he fully acquiesced that the business should be conducted on the same principles as it had been previously to his receiving a mortgage, which

J. Makee and Emily E. M. Peck *v.* J. O. Dominis and C. R. Bishop.

bears date June 30th, 1873, to secure notes given February 5th, 1872. And now, when the partners have concluded to wind up the affairs of the association, he cannot come in and put himself in any better position than he was in before.

When James Makee sold, if the purchaser had dissolved the partnership, instead of forming a new one, he could have only held his interest in the surplus, after the partnership debts were paid, and the vendor as mortgagee cannot stand in any better condition.

Chief Justice Parker, in the case of Lanzing *vs.* Bowen, 11 N. H. R. 407, says, that the mortgagee, having permitted the mortgagor to continue the business, could only be entitled to such surplus as might remain after the payment of the partnership debts; whether contracted before or after the execution of the mortgage, he could stand in no better situation than the mortgagor in this respect.

In view of the whole circumstances of this case, we are of opinion that the partnership property should be applied in the first place to the payment of the partnership debts, and that the plaintiffs can only claim one quarter part of the assets remaining, by virtue of the mortgage of said Parker N. Makee.

A. S. Hartwell for plaintiffs.

R. H. Stanley and L. McCully for defendants.

Honolulu, October 14th, 1874.